UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/01/2016

SAJU GEORGE,

                Plaintiff,

      -against-

PROFESSIONAL DISPOSABLES
INTERNATIONAL, INC., et al.,

                Defendant.

15-CV-03385 (RA) (BCM)

**REPORT AND RECOMMENDATION TO THE HONORABLE RONNIE ABRAMS**

**BARBARA MOSES, United States Magistrate Judge.**

Before me for report and recommendation is a motion by defendant Professional Disposables International, Inc. (PDI) to dismiss portions of the Amended Complaint filed by plaintiff Saju George. PDI moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the age discrimination claims asserted in plaintiff's Third and Fifth Causes of Action and the "failure to accommodate" claim asserted in his Fourth Cause of Action. For the reasons set forth below, I respectfully recommend that PDI's motion be GRANTED.

## BACKGROUND

### Factual Allegations

Defendant PDI is a supplier of wipes, pads, swabs, and other hospital and diagnostic supplies. Am. Compl. (Dkt. No. 37) ¶ 1. Plaintiff George was employed for 17 years at PDI's Orangeburg, New York plant, beginning as a machine operator and serving most recently as a "Mechanic B," until his employment was terminated on January 16, 2014. *Id.* ¶¶ 1, 3, 15, 18.

According to the Amended Complaint, plaintiff was dismissed "without a valid, true, [or] justifiable reason," but instead "for a variety of discriminatory reasons, based upon color, national origin, etc., and including the reason that plaintiff George was already reaching 50." *Id.* ¶ 3. Plaintiff asserts that he was the victim of a "plot" or "trap," designed to create pretextual grounds

for his termination; that the plot was successful; and that as a result he was "falsely framed" and "charged . . . with . . . flimsy, manufactured, false, superfluous and trumped up allegations" that led to his summary termination. *Id.* ¶¶ 18, 28-29. The Amended Complaint does not describe the "trumped up allegations" used to discharge plaintiff or the nature of the misconduct for which he was "framed."[1] It does assert that George was "targeted because of his Asian-ethnic origin, color, race, age, disability[,] and moreover for the reason that he was offered a promotion as Grade 'A' Mechanic, just a few weeks before his termination by the Company's top Management, which did not go well with [his] immediate Supervisor," Joseph Zocalli. *Id.* ¶ 24. Plaintiff alleges that he was terminated "along with three others, who were also of different race and national origin," *id.* ¶¶ 18-19, 27-28, and "without 'any accommodation,' though [he] suffered from a workplaced [sic] injury related disability." *Id.* ¶ 36.

---

[1] Although the factual allegations in the Amended Complaint are somewhat difficult to decipher, it appears that the "plot" was put in motion on December 31, 2013, when a supervisor told plaintiff and three other employees that they could punch out early but still be paid for the full day. Am. Compl. ¶ 32. The supervisor also told George and the others "to tell anyone, if asked, that they left at the usual time." *Id.* On January 2, 2014, when plaintiff returned to work after the New Year's Day holiday, he was questioned by multiple members of PDI's management, including Zocalli, about what time he left during his December 31 shift, and informed them, truthfully, that he left around noon. *Id.* ¶¶ 33-35. Thereafter, "nothing happened until January 16, 2014," when plaintiff was handed a "letter of termination" without any "notice or order to show cause [or] opportunity to formally explain." *Id.* ¶ 36. Several days later, "it dawned on plaintiff" that PDI terminated him as part of a "clear pre-planned diabolical plot," for which "[t]here could have been many reasons," including "his race and Asian background," the fact that he was "getting aged" (meaning that he was "reaching 50"), and the attitude of his supervisor, Zocalli, who was "annoyed" with George because a higher-level manager had offered George a promotion to a position that Zocalli "wanted his own person to fill." *Id.* ¶ 39. Plaintiff implies, though he does not state clearly, that the three other employees who were told to punch out early on December 31, 2013 were dismissed as well. *See id.* ¶ 32 (George and "three others" were told to punch out early); *id.* ¶ 39 ("trickery" was played on George "and his three other colleagues"); *id.* ¶¶ 27-28 (plaintiff was dismissed along with "three others").

With respect to plaintiff's claim that he was targeted because of his race (Asian) and national origin (unspecified), the Amended Complaint alleges that Zocalli's favored candidate for promotion was not Asian; that for the last two years of plaintiff's employment at PDI Zocalli "would openly show racially intoned actions and utterances and ridicule and hatred towards plaintiff"; and that Zocalli's actions "were full of hatred, ridicule, insults, and taunts based upon [plaintiff's] skin color, Asian origin and background, his language, his accent, racially connotated intimidation." *Id.* ¶¶ 40, 42-43. In addition, as noted above, plaintiff alleges that three other employees terminated at the same time "were also of different race and national origin" and "belonged to [a] minority." *Id.* ¶¶ 28-29. Plaintiff does not specify the race or national origin of these employees.

With respect to plaintiff's claim of age discrimination, the Amended Complaint is devoid of supporting facts. Although plaintiff alleges several times that he was "reaching 50" or "over 40," *id.* ¶¶ 3, 25, 39, 59, he does not describe any discriminatory acts or statements related to his age or otherwise allege any facts that link his termination to his age. He does not specify the ages of the three other employees terminated along with him, nor the age of Zocalli's favored candidate for promotion. He does not allege that he or any of his three terminated colleagues was replaced with a younger worker.

With respect to plaintiff's claim that he was not offered any accommodation for his asserted disability, the Amended Complaint alleges that in approximately 2006 George suffered a workplace injury to his right leg that required "a minor surgery" and resulted in permanent pain and limping. *Id.* ¶¶ 45, 64. Plaintiff "recorded his workplace injury" with PDI. *Id.* Plaintiff's supervisor Zocalli, "who was already critical of and ridiculed [plaintiff's] Asian origin, his language[,] accent, his color and disability, further ridiculed [sic] his limping." *Id.* ¶ 46.

3

However, plaintiff does not allege that his limp inhibited him in any way when performing his job duties, that he required any accommodation, or that he ever requested any accommodation. To the contrary, "[e]ven when assigned duties outside the factory premises in the open, at the harshest times of severest winter seasons of each and every year, Plaintiff . . . submits he had never objected to go outside the factory premises to carry out the duties that were assigned to him and never, ever asked his seniors to assign someone else instead." *Id.* ¶ 22. Nor does plaintiff allege that the reasons given for his termination (which he never describes) had any connection to his injury or his limp. The Amended Complaint simply asserts that PDI "failed to afford him a 'reasonable accommodation'" when it "took a decision to terminate him from the services on a false pretext." *Id*. ¶ 47.

### Procedural Background

George and his wife, Ani Amma George, filed this action on April 30, 2015. The original complaint (Dkt. No. 1) asserted five causes of action against PDI: for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*; employment discrimination in violation of the New York State Human Rights Law (NYHRL), N.Y. Exec. L. §§ 290 *et seq.*; retaliation in violation of Title VII and the NYHRL; and "Loss of Consortium Damages" on behalf of Ms. George. PDI answered the complaint and the parties engaged in mediation, which was unsuccessful. On September 28, 2015, the Hon. Ronnie Abrams, United States District Judge, granted plaintiff's application to voluntarily withdraw the fifth cause of action, for loss of consortium, with prejudice. (Dkt. No. 13.)

On November 2, 2015, Judge Abrams issued a Case Management Plan and Scheduling Order (Dkt. No. 16) giving plaintiff a deadline of December 3, 2015 to amend his complaint if he

desired to do so. On December 4, 2015, plaintiff requested an extension of time through December 7, 2015 to file an amended complaint, supported by the unsworn affirmation of his counsel, Ganesh Nadi Viswanathan, to the effect that counsel's prior commitments prevented him from filing the planned amendment on time. (Dkt. No. 17.) Judge Abrams granted the application (Dkt. No. 19), but plaintiff once again missed the deadline and did not file his Amended Complaint (Dkt. No. 21) until December 8, 2015, accompanied by a second application for an extension of time, in which Mr. Viswanathan explained that he had been busy with an urgent matter for a pro bono client. (Dkt. No. 20.) On December 10, 2015, over PDI's objections, Judge Abrams granted the application, advising plaintiff that the Court would accept the Amended Complaint but "will not accept late filings in the future." (Dkt. No. 23.)

Three days later, on December 11, 2015, plaintiff filed a slightly different version of the Amended Complaint, correcting minor typographical and formatting errors. (Dkt. No. 24.) Three days after that, on December 14, 2015, he filed a "first amended complaint" with significantly expanded allegations. (Dkt. Nos. 26, 27.)  On December 17, 2015, Judge Abrams rejected the "first amended complaint" and ordered plaintiff to "re-file the Amended Complaint in the format contained in docket number 21 by December 21, 2015, or proceed under the original Complaint." (Dkt. No. 32.)

On December 21, 2015, plaintiff re-filed the Amended Complaint, but neglected to attach a copy of the order permitting him to do so, causing the Clerk's office to reject the filing. (Dkt. No. 36.) On December 22, 2015, plaintiff once again re-filed the Amended Complaint, along with a letter-motion for an extension of time to do so, in which counsel explained his difficulties the day before. (Dkt. Nos. 37, 38.) On December 28, 2015, Judge Abrams issued an order (Dkt. No.

40) accepting the December 22, 2015 Amended Complaint,[2] and on December 29, 2015, PDI filed the instant motion to dismiss with supporting papers. (Dkt. Nos. 41-43.)

The Amended Complaint is pleaded in six causes of action, all on behalf of Mr. George individually, against PDI and four individual PDI managers.[3] The First Cause of Action accuses PDI of "discrimination, disparate treatment and hostile environment" on the basis of "race, color, and national origin," in violation of Title VII and 42 U.S.C. §§ 1981 and 1983. The Second Cause of Action accuses the individual defendants of discrimination and related misconduct in violation of 42 U.S.C. §§ 1981 and 1983. The Third Cause of Action asserts a claim against all defendants for age discrimination under the ADEA. The Fourth Cause of Action, which also appears to be asserted against all defendants, is labeled "Failure to Accommodate Plaintiff Who Suffers From a Permanent Pain and Limping on his Right Leg Caused by a Workplace related injury" (capitalization in the original), and alleges that defendants dismissed plaintiff without providing him a "reasonable accommodation," but does not reference any federal or state statute. The Fifth Cause of Action accuses PDI of employment discrimination on the basis of plaintiff's age, race, color, and national origin, in violation of the NYHRL. Finally, in his Sixth Cause of Action, plaintiff alleges that PDI is liable under the doctrine of *respondeat superior* for the individual

---

[2] The version of the Amended Complaint filed on December 22, 2015, at Dkt. No. 37, appears to be the cleaned-up version first filed on December 11, at Dkt. No. 24, rather than the original Amended Complaint filed on December 8, at Dkt. No. 21, which is what Judge Abrams gave the plaintiff permission to re-file.

[3] None of the individual defendants had been served with process at the time PDI filed its motion to dismiss. On May 23, 2016, defendants Zocalli, Custer (Jay) Amarillo, and David Penella moved to dismiss the Amended Complaint as against them pursuant to Fed. R. Civ. P. 12(b)(5), for failure to make timely service, and 12(b)(6), for failure to state a claim. (Dkt. No. 77.) The fourth named individual defendant, Jodi Kiernan, has apparently never been served with process. *See* Memorandum and Order dated May 16, 2016 (Dkt. No. 76.)

6

defendants' discriminatory acts in violation of 42 U.S.C. §§ 1981 and 1983, the ADEA, and the NYHRL.

PDI's motion, as filed, sought an order dismissing plaintiff's § 1983 claims against it, as well as his claims alleging age discrimination, "failure to accommodate," and *respondeat superior* liability. (Dkt. No. 41.)  Plaintiff's opposition papers were due on January 15, 2016. Plaintiff missed that deadline. Instead, shortly after midnight on January 16, 2016, he filed a cross-motion, an affirmation signed by Mr. Viswanathan, and a brief, all dated January 15. The cross-motion (Dkt. No. 44) sought permission to voluntarily dismiss his § 1983 and *respondeat superior* claims against PDI, and to replace the *respondeat superior* claim with a claim for "Negligent Recruiting, Selecting, Hiring, Training, Supervising and Negligence in Establishing Policies and Procedures." The brief requested that Judge Abrams grant his cross-motion to further amend his pleading and deny "as premature" the motion to dismiss, promising to "explain during the course of the [sic] discovery as to how he was targeted for a variety of reasons, including race, color, nationality, age, etc." *See* Pl. Mem. of Law (Dkt. No. 45), at 4, 5. In the alternative, plaintiff asked to be "afforded an opportunity to file a detailed 'Memoradum [sic] of Law'" and "a detailed Statement of the Case" in response to PDI's motion to dismiss. *Id.* Plaintiff did not explain why he failed to file that detailed memorandum when it was due.

On February 19, 2016, Judge Abrams issued an Order (Dkt. No. 52) accepting plaintiff's late-filed papers but denying him permission to further amend his pleadings or file additional briefing in opposition to the motion to dismiss. Judge Abrams also ordered plaintiff to inform the court by February 26, 2016, if he objected to dismissal (without replacement or amendment) of his § 1983 claim against PDI, asserted in his First Cause of Action, and his *respondeat superior* claim,

asserted in his Sixth Cause of Action. *Id*. at 2. On February 26, 2016, plaintiff filed a letter agreeing to voluntarily dismiss those claims. (Dkt. No. 57.)

On February 23, 2016, this action was referred to me for general pretrial management, and on April 7, 2016, the motion to dismiss was referred to me as well, for report and recommendation. (Dkt. No. 67.)

## DISCUSSION

### 1.    Standard for Motion to Dismiss

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, the court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "As the Court held in *Twombly*, the pleading standard Rule 8

announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009).

**2.       Age Discrimination**

In his Third and Fifth Causes of Action, plaintiff alleges that he was terminated from his job because of his age, and that he was subjected to a hostile work environment because of his age, in violation of both the ADEA and the NYHRL. *See* Am. Compl. at 23, 27.[4]  I address each species of age discrimination claim separately.

**a.       ADEA Disparate Treatment Claim**

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Courts in this circuit address ADEA claims using the *McDonnell Douglas* burden-shifting framework, under which the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). In the ADEA context, this initial burden requires plaintiff to show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Cretella v.*

---

[4] The Third Cause of Action, pleaded under the ADEA, alleges age discrimination only. The Fifth Cause of Action, pleaded under the NYHRL, alleges that PDI discriminated against plaintiff on the basis of his "age, race, color, and national origin." Am. Compl. ¶ 70. PDI seeks dismissal of the age-based NYHRL claims only.

*Liriano*, 633 F. Supp. 2d 54, 70 (S.D.N.Y. 2009) (addressing ADEA and Title VII claims), *aff'd*, 370 F. App'x 157 (2d Cir. 2010).[5]

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), the Supreme Court held that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits," and thus that an employment discrimination plaintiff need not plead "specific facts establishing a *prima facie* case of discrimination" to survive a Rule 12(b)(6) motion. *Id*. at 508. However, *Swierkiewicz* relied upon pre-*Iqbal* pleading standards. In the post-*Iqbal* world a discrimination plaintiff, like any other plaintiff, must plead facts sufficient to render his claim "facially plausible," and "must give fair notice to the defendant of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (quoting *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 699 (S.D.N.Y. 2009)).

The elements of a *prima facie* case "provide an outline of what is necessary to render [employment discrimination] claims for relief plausible." *Pahuja v. Am. Univ. of Antigua*, 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (quoting *Sommersett v. City of New York*, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)). Put another way, the courts properly consider those elements at the pleading stage to determine "whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013) (quoting *Murphy v. Suffolk Cty. Comm. Coll.*, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)). *See also*

---

[5] Under the *McDonnell Douglas* framework, if a plaintiff meets this initial burden, the defendant must proffer "some legitimate, nondiscriminatory reason" for the challenged action, at which point the burden shifts back to the plaintiff to show that age was a "but-for" cause of the employer's action. *Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 25-26 (2d Cir. 2015).

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim").

To survive a motion to dismiss, therefore, a disparate treatment complaint must "plausibly support" the elements of a *prima facie* claim. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id*. That standard can be met a number of ways, for example, with allegations that an employer criticized an employee's performance in degrading terms, made invidious comments about an employee's protected group, offered more favorable treatment to employees not in the protected group, or replaced a terminated employee with an individual not in the protected group. *Id.* at 312 (citing *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)).

PDI does not challenge plaintiff's allegations that he was a member of a protected class,[6] that he was qualified for his position,[7] or that he suffered an adverse employment action.[8] PDI argues instead that plaintiff fails to "plausibly allege that . . . age was the 'but for' cause of PDI's termination of his employment." Def. Mem. of Law (Dkt. No. 43) at 6. At the pleading stage, plaintiff need not allege facts to support "the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311. However, he must plead

---

[6] The ADEA protects individuals at least 40 years old. *See* 29 U.S.C. § 631(a).

[7] Plaintiff alleges, among other things, that he earned several awards during his 17 years as an employee of PDI, including an award for "most dedicated worker," and that he "worked with all dedication, sincerity and purpose throughout his entire career at PDI." *See* Am. Compl. ¶¶ 16-17.

[8] Termination is an adverse employment action. *See Leibowitz*, 584 F.3d at 499.

facts that "give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Id*. at 312. *See also Ruiz v. City of New York*, 2015 WL 5146629, at *3 (S.D.N.Y Sept. 2, 2015) ("Plaintiffs' claims will survive to the extent Plaintiffs have plausibly asserted facts supporting an inference of discrimination under the *McDonnell Douglas* framework").

The Amended Complaint does not meet even this "reduced" standard. Plaintiff mentions age only three times in his pleading, *see* Am. Compl. ¶¶ 3, 24-25, 39, and provides nothing beyond purely conclusory assertions that his age must have been a basis – one of many discriminatory bases – for his termination. Unlike his allegations regarding race and national origin, plaintiff's boilerplate allegations with respect to age lack any factual underpinning whatsoever. Plaintiff does not describe any comments, discriminatory or otherwise, about his age. There is no suggestion that plaintiff's age was ever discussed in connection with his termination; that he was ever criticized based on his age; that he was treated less favorably than younger employees; that he was ultimately replaced with a younger person; or that any of the events leading to his termination involved his age in any way. Nor does plaintiff allege that any of the other three employees dismissed along with him were over 40, or that any were replaced with younger workers. In short, no basis for plaintiff's speculation that his age may have been a factor in his termination appears at any point in the Amended Complaint.

Since the pleading before me contains insufficient factual allegations to support an inference of discrimination based on age, I respectfully recommend that the Third Cause of Action be dismissed to the extent it asserts a disparate treatment claim under the ADEA.

### b.   ADEA Hostile Work Environment Claim

Plaintiff also alleges that PDI and the individual defendants "caused/created harassment/hostile environment to plaintiff George on the basis of his age" in violation of the

ADEA. Am. Compl. ¶ 59. A hostile work environment claim is distinct from a disparate treatment claim, and requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006) (internal quotation marks omitted). "A plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Gorzynski*, 596 F.3d at 102. Generally, unless an incident of harassment is sufficiently severe, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*. (quoting *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)). Moreover, "there must be a specific basis for imputing the conduct creating the hostile work environment to the employer." *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 (S.D.N.Y. 2013).[9]

The Amended Complaint does not contain any allegations of age-based harassment. Plaintiff does not identify any actions or statements made by any employee of PDI that pertained to his age, directly or indirectly. Notably, while the Amended Complaint alleges that Zocalli ridiculed plaintiff's race and national origin, *see* Am. Compl. ¶¶ 42-43, it contains no comparable allegations of ridicule or insult based on plaintiff's age. The pleading does not even provide a timeframe during which the alleged age-based hostile work environment might have existed. Nor does it identify even one individual who allegedly harassed plaintiff based on his age.

---

[9] An employer's liability for harassment leading to a hostile work environment depends on the status of the individual harasser. When the harasser is a supervisor and the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. *See Preuss*, 970 F. Supp. 2d at 186. When the harasser is a coworker, the employer is liable only if it was negligent in controlling working conditions. *Id.* Here, plaintiff does not identify any harasser at all. The Amended Complaint therefore contains no basis for imputing liability to PDI under any standard.

Because the Amended Complaint contains no factual allegations in support of plaintiff's hostile work environment claim under the ADEA, I recommend that the Third Cause of Action be dismissed in its entirety.

### c.    NYHRL Age-Based Claims

Claims of age-based discrimination under the NYHRL are analyzed "under the same standard as discrimination claims brought under the ADEA." *Cappelli v. Jack Resnick & Sons, Inc.,* 2016 WL 958642, at *7 (S.D.N.Y. Mar. 8, 2016) (granting summary judgment against plaintiff on ADEA and NYHRL claims). *See also Mikinberg v. Bemis Co.*, 555 Fed. App'x 34, 35 (2d Cir. 2014) ("we have assumed, without deciding, that the ADEA's 'but for' standard of causation also applies to age discrimination claims brought under the [NYHRL]"); *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 n.2 (2d Cir. 2004) (since the NYHRL "mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other"). The state courts are in accord. "The elements of an age discrimination claim under the [NYHRL] and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes." *Brannigan v. Bd. of Educ. of Levittown Union Free Sch. Dist.*, 796 N.Y.S.2d 690, 692 (N.Y. App. Div. 2005). This principle applies to hostile work environment claims as well as disparate treatment claims. *See Dressler v. New York City Dep't of Educ.*, 2012 WL 1038600, at *14 (S.D.N.Y. Mar. 29, 2012) (granting summary judgment against plaintiff on hostile work environment claim filed under the NYHRL for "the same reasons discussed" in analysis of the ADEA hostile work environment claim, because NYHRL claims use the same standards); *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 273 (E.D.N.Y. 2009) (dismissing hostile work environment claims under the ADEA and the NYHRL using same analysis).

Because plaintiff's state law age-based claims are subject to the same standards as his ADEA claims, discussed above, they fail for the same reasons the federal claims fail. I therefore recommend that the Fifth Cause of Action be dismissed to the extent it asserts age-based claims against PDI under the NYHRL.

**3.    Failure to Accommodate**

In his Fourth Cause of Action, plaintiff asserts a claim for "Failure to Accommodate," Am. Compl. at 25, without identifying the statute or statutes governing this claim. However, in the "Nature of the Claims" section of the Amended Complaint, plaintiff states that he seeks redress for failure to accommodate "under New York State Human Rights Laws." *Id*. ¶ 6. Plaintiff does not mention the Americans with Disabilities Act (ADA), which requires covered employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Nonetheless, in considering the Fourth Cause of Action, I will evaluate plaintiff's factual allegations under both the NYHRL and the ADA.

To establish disability discrimination arising from a failure to accommodate under the ADA, plaintiff must show: (1) that he is "a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006). In order to state a claim for failure to accommodate, moreover, the plaintiff must allege that he requested a reasonable accommodation and that his employer refused to make such an accommodation. *Falchenberg v. New York City Dep't of Educ.*, 375 F. Supp. 2d 344, 348 (S.D.N.Y. 2005) (dismissing ADA claim in part because "it is settled that an 'employee

15

cannot hold an employer liable for failing to provide an accommodation that the employee has not requested in the first place'") (quoting *Thorner–Green v. N.Y.C. Dep't of Corr.*, 207 F. Supp. 2d 11, 14-15 (E.D.N.Y. 2002)).

The elements of a failure to accommodate claim under the NYHRL mirror those of the ADA. *See Cty. of Erie v. N.Y. State Div. of Human Rights*, 993 N.Y.S.2d 849, 850 (N.Y. App. Div. 2014) (*prima facie* case of "discrimination based upon the denial of a reasonable accommodation" requires establishing that "[plaintiff] is a person with a disability, that [employer] had notice of it, that [plaintiff] could perform the essential functions of her job with a reasonable accommodation, and that [employer] refused to make such accommodation") (citing *Matter of Abram v. N.Y. State Div. of Human Rights,* 896 N.Y.S.2d 764 (N.Y. App. Div. 2010)).

Plaintiff alleges that PDI terminated his employment "without providing [him] with a '*reasonable accommodation*,' considering his workplace related injury and the permanent pain it caused." Am. Compl. ¶ 65 (quotation marks and emphasis in the original). However, the Amended Complaint contains no factual allegations suggesting that plaintiff's injury or the resulting limp adversely impacted his ability to perform the essential functions of his job. Nor does it allege that plaintiff ever requested any accommodation, much less that PDI refused such a request.[10] Indeed, as noted above, plaintiff emphasizes that he did not ask for reassignment of his outdoor duties during the winter. *Id.* ¶ 22. *See Jordan v. Forfeiture Support Assoc.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (cautioning plaintiff in *dicta* that her failure to accommodate claim was deficient

---

[10] The Court therefore need not address the question whether plaintiff's limp qualifies as a "disability" for purposes of a failure to accommodate claim under the ADA or the NYHRL.

because it contained no allegations "that plaintiff requested a reasonable accommodation or that [her employer] refused to make such an accommodation").[11]

Because the Amended Complaint contains no factual allegations to support key elements of plaintiff's failure to accommodate claim, I recommend that the Fourth Cause of Action be dismissed in its entirety.

## CONCLUSION

For the reasons set forth above, I recommend that PDI's motion be GRANTED. The Third Cause of Action, which contains plaintiff's federal age discrimination claims, should be dismissed as against PDI. The Fifth Cause of Action, which contains plaintiff's claims under the NYHRL, should be dismissed as against PDI to the extent that it alleges age discrimination. The Fourth Cause of Action, which contains plaintiff's failure to accommodate claims, should be dismissed as against PDI. Because plaintiff has agreed to voluntarily dismiss his § 1983 and *respondeat superior* claims, set forth in the First and Sixth Causes of Action, those claims should also be dismissed.

---

[11] It also appears that plaintiff failed to exhaust his administrative remedies with respect to any federal claim for failure to accommodate. The ADA requires that "the claims forming the basis of [the federal suit] . . . first be presented in a complaint to the [Equal Employment Opportunity Commission] or the equivalent state agency." *Williams* v. *N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). *See also* 42 U.S.C. § 12117 (incorporating Title VII exhaustion requirements into the ADA). Plaintiff's "Notice of Right to Sue" letter from the Equal Employment Opportunity Commission (EEOC), which is attached to the Amended Complaint as an exhibit, may be considered by the Court when ruling on a motion to dismiss. *See Geldzahler*, 663 F. Supp. 2d at 386-87. According to that letter, plaintiff filed a charge of discrimination with the EEOC on September 4, 2014, limited to allegations of retaliation and discrimination on the basis of "race, color, national origin, and age." Am. Compl. at 34. The right to sue letter does not mention disability or the ADA, meaning that this claim, even if properly pleaded, was not first presented to the EEOC. *See Malachi v. Postgraduate Ctr. for Mental Health*, 2013 WL 782614, at *3 (E.D.N.Y. Mar. 1, 2013) (dismissing age and disability discrimination claims because EEOC complaint contained only race discrimination and retaliation claims, and "[w]ithout facts suggesting plausible grounds on which to base an age- or disability-related claim, it is unlikely that the EEOC would explore such claims during its investigation").

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Ronnie Abrams at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Abrams. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
         June 1, 2016

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**