USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/31/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAJU GEORGE, | 15-CV-03385 (RA) (BCM) |
| Plaintiff, | |
| -against- | |
| PROFESSIONAL DISPOSABLES INTERNATIONAL, INC., et al., | **REPORT AND RECOMMENDATION TO THE HONORABLE RONNIE ABRAMS** |
| Defendant. | |

**BARBARA MOSES, United States Magistrate Judge.**

Before me for report and recommendation is a motion by defendants David Pennella, Joseph Zocalli, and Custer "Jay" Amarillo (the Moving Defendants) to dismiss the Amended Complaint (Dkt. No. 37) in its entirety for untimely service of process, pursuant to Fed. R. Civ. P. 12(b)(5), or, in the alternative, to dismiss portions of the Amended Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, I respectfully recommend that the motion to dismiss the Amended Complaint as to the Moving Defendants under Rule 12(b)(5) be GRANTED. In the alternative, I recommend that the motion to dismiss portions of the Amended Complaint for failure to state a claim under Rule 12(b)(6) be GRANTED.

## BACKGROUND

### I.    Factual Background

The facts of this case are summarized in my June 1, 2016 Report and Recommendation, which recommended granting a motion to dismiss portions of the Amended Complaint made by defendant Professional Disposables International, Inc. (PDI) on December 29, 2015. *See George v. Prof'l Disposables Int'l, Inc.*, 2016 WL 3648371, at *1–4 (S.D.N.Y. June 1, 2016), *report and recommendation adopted*, 2016 WL 3906715 (S.D.N.Y. July 14, 2016). Plaintiff George was employed by PDI for 17 years, until his employment was terminated on January 16, 2014. Am.

Compl. ¶¶ 1, 3, 15, 18. Plaintiff alleges that the Moving Defendants are all "managerial/supervisory personnel" employed by PDI at its Orangeburg, New York facility. *Id.* ¶ 14. Zocalli, a maintenance supervisor, was plaintiff's immediate superior during at least part of plaintiff's employment. *Id.* ¶¶ 26, 33. Amarillo is a supervisor in the "liquids department." *Id.* ¶ 41. Pennella is a "director" at PDI. *Id.* ¶ 40.

Plaintiff alleges that he suffered various forms of discrimination while employed at PDI and was ultimately dismissed "for a variety of discriminatory reasons, based upon color, national origin, etc." *Id.* ¶ 3. As described in my June 1 Report and Recommendation, plaintiff asserts generally that Zocalli and others "orchestrated" a sequence of events designed to create pretextual grounds for termination of plaintiff's employment. *Id.* ¶¶ 3, 26–27. "As the first step," plaintiff alleges he was called in to work on December 24, 2013, and while working that shift, was told by Amarillo (his weekend supervisor) that he should go home early, which he did. *Id.* ¶ 26. "Once the individual defendants were reassured that plaintiff . . . would fall into [their] trap" based on what plaintiff described as their December 24 "mock-exercise," they went forward with "the second phase of the plot." *Id.* ¶ 30. On December 31, 2013, a different supervisor told plaintiff and three other employees that Pennella had instructed that they be allowed to punch out early but still be paid for the full day. *Id.* ¶ 32. The supervisor instructed them to "tell anyone, if asked, that they left at the usual time." *Id.* ¶¶ 30–32. On January 2, 2014, plaintiff was questioned by Zocalli and other members of PDI's management about what time he left during his December 31 shift, and he informed them, truthfully, that he left around noon. *Id.* ¶¶ 33–35. PDI terminated plaintiff's employment two weeks later, on January 16, 2014. *Id.* ¶ 36. Plaintiff began to suspect a "plot" several days after that. *Id.* ¶ 39.

Other than the conclusory assertion that Amarillo was a member of the "plot," plaintiff's only allegations concerning Amarillo are that he instructed plaintiff to go home early on December 24. *Id.* ¶ 26. Plaintiff describes no other encounters – discriminatory or otherwise – between himself and Amarillo. Likewise, the only references to Pennella, aside from a vague allegation of membership in the "plot," are (1) that Ricardo, plaintiff's December 31 supervisor (who is not named as a defendant), reported that Pennella was sending everyone home for the day, and had instructed that they tell anyone who asked that they left at their usual time; and (2) that two months earlier, in October 2013, Pennella offered to promote plaintiff if he completed additional training and passed an interview with the human resources department. *Id.* ¶ 40.

Plaintiff's allegations against Zocalli are somewhat more detailed, and relate to plaintiff's allegations of discrimination based on his "Asian-ethnic origin, color, [and] race." *Id.* ¶ 24. Plaintiff alleges that during the two years before he was fired, Zocalli "would openly show racially intoned actions and utterances and ridicule and hatred towards plaintiff" on a daily basis, and that Zocalli's actions "were full of hatred, ridicule, insults, and taunts based upon [plaintiff's] skin color, Asian origin and background, his language, his accent, racially connotated intimidation." *Id.* ¶¶ 40, 42–44, 46. Plaintiff also alleges that Zocalli was "annoyed" that Pennella offered plaintiff a promotion, because Zocalli favored another candidate for that role who was "of lower seniority" but "not Asian." *Id.* ¶¶ 39–40.

The Amended Complaint states several times that plaintiff was "reaching 50" or "over 40," *id.* ¶¶ 3, 25, 39, 59, but is devoid of any other facts that would support a claim for age discrimination. Plaintiff does not describe any discriminatory acts or statements related to his age by Zocalli or any other defendant.

## II.     Procedural Background

Plaintiff and his wife, Ani Amma George, filed their complaint on April 30, 2015, naming only PDI as a defendant. (Dkt. No. 1.) Plaintiff and Ms. George served PDI with a summons and complaint through the New York Secretary of State on July 16, 2015. (Dkt. No. 9.) Plaintiff filed an Amended Complaint on December 8, 2015 (failing to meet the December 7 filing deadline set by Judge Abrams), which included new allegations against individual defendants Pennella, Zocalli, Amarillo, and Jodi Kiernan, a human resources manager for PDI. (Dkt. No. 21.)[1] Plaintiff attached a request for issuance of a summons (Dkt. No. 21-1) to his Amended Complaint. Judge Abrams issued an order accepting the late-filed Amended Complaint on December 10, 2015, but warned plaintiff that "the Court will not accept late filings in the future." (Dkt. No. 23.)

On December 11, 2015, without obtaining leave from Judge Abrams, plaintiff filed an edited version of the Amended Complaint containing minor typographical and formatting corrections (Dkt. No. 24), accompanied by a new request for summons (Dkt. No. 25). On December 14, 2015 – again without leave from the court – plaintiff filed a more substantially altered "First Amended Complaint," which contained additional allegations, accompanied by yet another request for issuance of summons. (Dkt. Nos. 26, 27, 28.) Judge Abrams rejected this First Amended Complaint and ordered plaintiff to refile his December 8 Amended Complaint. *See* Order dated Dec. 17, 2015 (Dkt. No. 32). Instead, on December 21, 2015, plaintiff re-filed the December 11 version of the Amended Complaint (Dkt. No. 35), again accompanied by a request for issuance of summons (Dkt. No. 36). Due to an electronic filing error, the December 21 Amended Complaint was rejected, and plaintiff re-filed the document on December 22, 2015, this

---

[1] Kiernan has apparently never been served with process, and has not appeared in this action. *See* Mem. & Order dated May 16, 2016 (Dkt. No. 76).

time without including a request for issuance of summons. On December 28, 2016, Judge Abrams issued an order (Dkt. No. 40) accepting the December 22 version of the Amended Complaint.

The Amended Complaint pleads six causes of action, all on behalf of Mr. George individually. The Second, Third, and Fourth Causes of Action – and possibly the Fifth – appear to contain allegations against Pennella, Zocalli, Amarillo, and Kiernan (the Individual Defendants).[2] The Second Cause of Action accuses each Individual Defendant of "discrimination, disparate treatment and hostile environment," in violation of 42 U.S.C. §§ 1981 and 1983. Am. Compl. ¶ 54. The Third Cause of Action asserts a claim against all defendants, including the Individual Defendants, for age discrimination under the ADEA. *Id.* ¶ 59. The Fourth Cause of Action alleges that all defendants, including the Individual Defendants, dismissed plaintiff without providing him a "reasonable accommodation" for his "permanent pain and limping," but does not reference any federal or state statute. *Id.* ¶ 65. I previously construed this Cause of Action as a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the New York State Human Rights Law (NYHRL), N.Y. Exec. L. §§ 290 *et seq. See George*, 2016 WL 3648371, at *7–8. The Fifth Cause of Action accuses "defendant" of employment discrimination in violation of the NYHRL on the basis of plaintiff's age, race, color, and national origin. Am. Compl. ¶ 70.[3]

---

[2] The First Cause of Action accuses PDI of discrimination and related misconduct on the basis of "race, color, and national origin," in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983. Am. Compl. ¶¶ 48–52. The Sixth Cause of Action asserts that PDI is liable under the doctrine of *respondeat superior* for alleged discriminatory acts by the Individual Defendants. *Id.* ¶¶ 74–79. On January 16, 2016, plaintiff requested permission to voluntarily dismiss his § 1983 and *respondeat superior* claims against PDI with prejudice. (Dkt. No. 44.) He later clarified that since the Sixth Cause of Action only contained allegations against PDI, the entire cause of action should be dismissed pursuant to his January 16 request. *See* Pl. Mem. of Law (Dkt. No. 86-2), at 4; Aff. of Ganesh Nadi Viswanathan (Dkt. No. 86) ¶ 10. The Sixth Cause of Action has accordingly been dismissed.

[3] The vague language of the Fifth Cause of Action leaves considerable doubt as to whether it is asserted against any of the Individual Defendants. It refers to "defendant corporation," *id.* ¶¶ 71, 73, or "defendant," *id.* ¶¶ 70, 72, but never refers to any Individual Defendant by name or even to

On May 23, 2016, the Moving Defendants filed their motion to dismiss (Dkt. No. 77), accompanied by a memorandum of law (Dkt. No. 82), an affirmation from defense counsel David Garland, Esq. (Dkt. No. 78), and additional affirmations from each of the three Moving Defendants, stating that a summons and a copy of the Amended Complaint directed to each was delivered to PDI's Orangeburg, NY facility on April 19, 2016, and each later received the same summons and Amended Complaint via first-class mail. Aff. of David Pennella (Dkt. No. 79) ¶¶ 3–4; Aff. of Joseph Zocalli (Dkt. No. 80) ¶¶ 3–4; Aff. of Custer Amarillo (Dkt. No. 81) ¶¶ 3–4.[4]

On June 6, 2016 plaintiff's counsel Viswanathan filed his own affirmation, requesting leave for the plaintiff to "voluntarily withdraw 'Failure to Accommodate' under the 'Fourth Cause of Action' against all defendants and [the §] 1983 complaint under 'Second Cause of Action' against the individual defendants." Viswanathan Aff., at 2.[5] Attached to this document were a "notice of cross motion requesting (1) appropriate relief pursuant to Fed. R. Civ. P. 4, including *nunc pro tunc*, and (2) requesting leave to withdraw the fourth cause of action and [§] 1983 complaint against all individual defendants" (Dkt. No. 86-1), and a memorandum of law in

---

"defendants" in the plural form. In contrast, the Second, Third, and Fourth Causes of Action all specifically name "Pennella, Kiernan, Zocalli and Amarillo," *id.* ¶¶ 54, 59, 65, and repeatedly refer to "each one of the individual defendants' unlawful discriminatory conduct," *id.* ¶¶ 54–56, 60–61, or "each one of the individual defendants' failure to accommodate." *Id.* ¶¶ 67–68. Nonetheless, for the purpose of the pending motion to dismiss, the Court will treat the Fifth Cause of Action as if it were asserted against the Individual Defendants in addition to PDI.

[4] In considering a motion to dismiss pursuant to 12(b)(5), the Court, must look to "matters outside the complaint" to determine whether service was adequate. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002). In contrast, when considering a motion pursuant to Rule 12(b)(6), the Court may only consider matters contained within the complaint. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). The Court's use of the additional evidence submitted with the motion is therefore limited to its analysis of the 12(b)(5) motion.

[5] Because the Second Cause of Action contains only allegations against the Individual Defendants, this would dispose of both Causes of Action in their entirety.

opposition to the motion to dismiss.[6] The Notice of Motion (at ¶¶ 2(a)–(b)) clarified that the claims were to be withdrawn with prejudice. On June 8, 2016, the motion to dismiss was referred to me for report and recommendation. (Dkt. No. 89.) Defendants filed a reply letter on June 15, 2016. (Dkt. No. 91.)

## **DISCUSSION**

### I.     **Failure to Meet and Confer or Seek the Court's Leave Before Moving to Dismiss**

Plaintiff argues that, because the Moving Defendants "did not write to the plaintiff and further did not seek the leave of this Honorable Court, requesting dismissal of action/claims against them" before moving to dismiss the Amended Complaint, the motion "should be denied in its entirety." Pl. Mem. of Law, at 14. Plaintiff cites no authority for this argument. Judge Abrams's Individual Rules of Practice in Civil Cases do not require the parties to confer, nor do they require that a party seek leave from the Court or request a pre-motion conference, before filing a pre-answer motion to dismiss.

### II.    **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(5)**

Where a defendant moves to dismiss under both Fed. R. Civ. P. 12(b)(5), for insufficient service of process, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim, the trial court will ordinarily "consider[ ] the jurisdictional issues first." *Darden*, 191 F. Supp. 2d at 386. *See also*

---

[6] Counsel filed the affirmation and attachments late in the evening of June 6, which was the deadline for filing of opposition papers. Shortly after midnight on June 7, counsel filed a separate copy of plaintiff's memorandum of law (Dkt. No. 87), and a motion requesting acceptance of the late-filed response. (Dkt. No. 88.) Citing counsel's lengthy history of failing to meet filing deadlines in this case, I denied the request, but accepted the copy of the memorandum of law attached to the affirmation, which was filed just before midnight. *See* Order dated June 8, 2016 (Dkt. No. 90.)

*Tomney v. Int'l Ctr. for the Disabled*, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) ("I address this dispositive issue first").[7]

### A. Legal Standard

"Federal Rule of Civil Procedure Rule 12(b)(5) provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m)." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 107–08 (S.D.N.Y. 2000). *See also Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016); *Tomney*, 2003 WL 1990532, at *3; *Bellis v. Tokio Marine & Fire Ins. Co.*, 2002 WL 193149, at *15 (S.D.N.Y. Feb. 7, 2002) ("Rule 12(b)(5) is the proper provision to challenge 'the mode of delivery or the lack of delivery of the summons and complaint.'") (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1353 (2d ed.1990)); *Mused v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 169 F.R.D. 28, 36 (W.D.N.Y. 1996).

When a Rule 12(b)(5) motion is made, the plaintiff bears the burden of proving adequate service. *Vantone*, 2016 WL 3926449, at *2; *Darden*, 191 F. Supp. 2d at 387; *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). In considering a motion to dismiss pursuant to Rule 12(b)(5) , a court must look at "matters outside the complaint" to determine whether service was

---

[7] "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Thus, although a Rule 12(b)(5) motion is distinct from a Rule 12(b)(2) motion, which challenges "the actual existence of personal jurisdiction," *id*., both go to the Court's ability to exercise judicial power over the defendant; consequently, as a matter of both logic and efficiency, a Rule 12(b)(5) motion is ordinarily considered before any merits-based challenge to the complaint.

adequate. *Darden*, 191 F. Supp. 2d at 387. The court must also "consider[] the parties' pleadings and affidavits in the light most favorable to the non-moving party." *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 84 (S.D.N.Y. 1999).

Rule 4(m), which governs the timeliness of service, states: "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[8]  However, if the plaintiff shows good cause for the failure to effect service, "the court must extend the time for service for an appropriate period."  *Id*.

"The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *AIG Managed Mkt. Neutral Fund*, 197 F.R.D. at 108. Good cause is "measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." *Vantone*, 2016 WL 3926449, at *2. *Accord DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (citing *Carroll v. Certified Moving & Storage, Co., LLC*, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) and *AIG Managed Mkt. Neutral Fund*, 197 F.R.D. at 108). Attorney neglect and inadvertence "are generally not sufficient to support a finding of good cause." *Songhorian v. Lee*, 2012 WL 6043283, at *3 (S.D.N.Y. Dec. 3, 2012) (citing *Bakal v. Ambassador Const.*, 1995 WL 447784, at *2 (S.D.N.Y. 1995)). Moreover, "[t]his proposition applies equally . . . to corporate litigants as well as individual litigants, to rich

---

[8] Fed. R. Civ. P. 4(m) was amended, effective December 1, 2015, to reduce the time for service from 120 days to 90 days. While plaintiff's April 30, 2015 Complaint was subject to a 120-day service window, the Amended Complaint, filed on December 22, 2015, was subject to the new 90-day service window. *See* Mem. & Order dated May 16, 2016, at 1.

litigants as well as poor litigants, and to big-firm lawyers as well as sole practitioners." *Mused*, 169 F.R.D. at 35.

In certain circumstances, a court may grant an extension under Rule 4(m) even absent a showing of good cause, but this power is discretionary; the court is "not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *accord Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) ("We have interpreted this rule to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause."). In deciding whether to grant a discretionary extension, a court should consider the factors set forth in *DeLuca*, 695 F. Supp. 2d at 66.

### B. Application

#### i. Timeliness of Service

On April 19, 2016, the Rockland County Sheriff's Office delivered a copy of the Amended Complaint, as well as a summons, to each of the Moving Defendants by delivering those documents to PDI's Orangeburg facility – which was the Moving Defendants' workplace – and leaving them with Lorraine Gallagher, identified by Deputy Sheriff Jared Rudnick as PDI's Regulatory Compliance Counsel. *See* Amarillo Aff. ¶ 3; Pennella Aff. ¶ 3; Zocalli Aff. ¶ 3; Rockland County Sheriff's Office Cert. of Service, filed June 6, 2016 (Dkt. No. 85), at 1; Rockland County Sheriff's Office Cert. of Service, filed June 29, 2016 (Dkt. No. 93), at 1. That same day, the Sheriff's Office sent copies of the same documents to each Moving Defendant at their workplace by first class mail, marked "personal and confidential." *See* Rockland County Sheriff's Office Cert. of Service, filed June 6, 2016, at 1; Rockland County Sheriff's Office Cert. of Service, filed June 29, 2016, at 1. All three Moving Defendants acknowledge receiving the documents both by delivery and by mail. *See* Amarillo Aff. ¶ 4; Pennella Aff. ¶ 4; Zocalli Aff. ¶ 4.

Fed. R. Civ. P. 4(e)(1) states that a defendant may be served within the United States by, among other things, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." In New York, state law permits "leave and mail" service as described in the Moving Defendants' affidavits and Deputy Rudnick's certificates of service.[9] Such service is not "complete," however, until "ten days after" proof of such service is filed with the Clerk of the Court, which filing must take place "within twenty days of either such delivery or mailing, whichever is effected later." N.Y. C.P.L.R. § 308(2).  In this case, since both the mailing and the delivery occurred on April 19, 2016, plaintiff was required to file the corresponding certificates of service by May 9, 2016.

Plaintiff filed a proof of service as to Zocalli on June 6, 2016, and as to Panella on June 29, 2016. Neither filing was within the 20-day window specified by § 308(2). A search of the docket reveals no proof of service as to Amarillo. At best, therefore, it appears that plaintiff delivered the summons and Amended Complaint to each Moving Defendant on April 19, 2016 (119 days after he filed that Amended Complaint on December 22, 2015), but never "completed" service as to any Moving Defendant in compliance with § 308(2).

---

[9] N.Y. C.P.L.R. § 308(2) states, in relevant part, that a defendant may be served by:

> delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later.

11

"[C]ourts diverge as to whether the failure to file an affidavit of service with the court is itself a jurisdictional defect requiring dismissal." *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) (quoting *Garnett–Bishop v. New York Cmty. Bancorp, Inc.*, 2014 WL 5822628, at *11 (E.D.N.Y. Nov. 6, 2014)), *aff'd sub nom. Ahluwalia v. St. George's Univ.*, 626 F. App'x 297 (2d Cir. 2015). *Compare Pope v. Rice*, 2005 WL 613085, at *14 (S.D.N.Y. Mar. 14, 2005) ("'leave and mail' service under Section 308(2) is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of the date on which the process server mailed the summons and complaint") (quoting *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 660 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999)); and *Johnson v. Quik Park Columbia Garage Corp.*, 1995 WL 258153, at *2 (S.D.N.Y. May 2, 1995) (ordering dismissal where service was "ineffective because plaintiff did not file proof of service with the clerk of the court within 20 days  of the date on which her process server allegedly mailed a copy of the summons and complaint" to defendant, and noting that § 308(2) "requires strict compliance") (citing *McCray v. Petrini*, 212 A.D.2d 676, 676, 622 N.Y.S.2d 815, 816 (2d Dep't 1995)); *with Leung v. New York Univ.*, 2016 WL 1084141, at *8 n.8 (S.D.N.Y. Mar. 17, 2016) ("the failure to file [proper] proof of service is a procedural irregularity, not a jurisdictional defect, that may be cured by motion or *sua sponte* by the court in its discretion") (quoting *Khan v. Hernandez*, 122 A.D.3d 802, 803, 996 N.Y.S.2d 667, 668 (2d Dep't 2014)) (alteration in original); *and King v. Galluzzo Equip. & Excavating, Inc.*, 2001 WL 1402996, at *5 (E.D.N.Y. Nov. 8, 2001) ("plaintiffs' delay is not fatal; a delay in filing proof of service is correctable, and will not invalidate otherwise effective service.").

Regardless of whether his failure to file timely proofs of service, standing alone, rendered that service ineffective, plaintiff does not dispute that he failed to serve any of the Moving

Defendants, by any acceptable method, within the 90-day deadline set out in Rule 4(m). Instead, plaintiff asks the Court to "deem the completion of Service of 'Amended Complaint' upon the individual defendants as proper" and "requests appropriate relief including *nunc pro tunc* in accepting the allegedly 'late filed Amended Complaint,' pursuant to Fed. R. Civ. P. 4(m), Fed. R. Civ. [P]. 6(b) and consequently denying in its entirety defendants' request for dismissal of the 'Amended Complaint,' as against individual defendants, for inadequate service pursuant to Fed. R. Civ. P. 12(b)(5)." Pl. Mem. of Law, at 15, 17.[10]

### ii. Good Cause

Plaintiff has failed to meet his burden of showing good cause for the untimely service. Plaintiff's memorandum asserts that he "made all diligent efforts to effect proper service upon the individual defendants," Pl. Mem. of Law, at 16, but does not describe any actual efforts to serve them on or before March 21, 2016, which is when the 90-day period set out in Rule 4(m) expired. Instead, plaintiff blames the untimely service on a host of circumstances, including "the amendment to the Statute being very recent in origin," "the series of the filings that the 'Amended Complaint' went through" in December 2015, "the fact . . . that the parties were in the middle of a very tight 'discovery schedule,' and more particularly the parties' depositions that were scheduled

---

[10] Rule 6(b) governs extensions of time generally. The court may extend a deadline "on motion made after the time has expired" only for good cause, on a showing that the party failed to act "because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The "excusable neglect" inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [adverse parties], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *In re PaineWebber Ltd. P'ship Litig*., 1996 WL 51189, at *3 (S.D.N.Y. Feb. 7, 1996) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), and citing *LoSacco v. City of Middleton*, 71 F.3d 88, 93 (2d Cir. 1995)). Plaintiff refers to Rule 6(b) once in his memorandum of law, but does not otherwise discuss it. To the extent his filing could be construed to seek relief under Rule 6(b), he fails to satisfy Rule 6(b)'s standard for relief for the same reasons discussed below in connection with Rule 4(m).

to close on February 19, 2016," and the fact that "plaintiff ultimately obtained the Summons issued on March 22, 2016." *Id.*

None of the factual assertions in plaintiff's memorandum concerning counsel's "diligent efforts" is supported by evidence. There is no sworn statement from the attorney whose efforts are in question, nor from anyone else. The Court therefore cannot consider those factual assertions except to the extent they are supported by documents or sworn statements that are otherwise part of the record in this case. *See Soos v. Niagara Cty.*, 2016 WL 3659139, at *4 (W.D.N.Y. July 1, 2016) (refusing to consider explanation for failure of timely service detailed in process servers' unsigned, unsworn affidavits, because the affidavits were "not in admissible form").

Even if supported by admissible evidence, plaintiff's excuses for his failure to comply with Rule 4(m) would not amount to good cause. The December 2015 amendments to the Federal Rules of Civil Procedure were hardly a secret. Moreover, the fact that it took several attempts before plaintiff managed to file the Amended Complaint in compliance with this Court's orders has no bearing whatsoever on his obligation to serve that Amended Complaint within 90 days after it was filed. Nor does a "tight" discovery schedule justify a plaintiff's neglect of his service obligations. *See Hertzner v. U.S. Postal Serv.*, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (no good cause where plaintiff's counsel gave instructions to his office to effect service but neglected to follow up, because he "was heavily engaged in trial and trial preparation, including numerous Court appearances in both the State and Federal Courts").[11] Plaintiff's final excuse – his failure

---

[11] The fact discovery cut-off in this action was February 29, 2016. A prudent attorney faced with such a cutoff would likely *expedite* service of process on any newly-named defendants, so as to bring them into the case while there was still time to obtain discovery from them.

even to obtain a summons until March 22, 2016 – is equally unavailing, as it was his obligation to obtain the summons in time to serve it within the period set out by Rule 4(m).[12]

Plaintiff's failure to request an extension of time to serve the Moving Defendants *before* the 90-day service period expired – or at any point until faced with a motion to dismiss – is also relevant to the "good cause" analysis. *See Novak v. National Broadcasting Co., Inc.*, 131 F.R.D. 44, 45 (S.D.N.Y. 1990) ("[a] determination of 'good cause' may rest on several factors, including whether the plaintiff made efforts to effect service or requested an extension of time to serve"). Plaintiff does not claim to have attempted service at all until late March 2016, by "personally meeting with the defendant's counsel and handing over the 'summons and complaint' copies for the individual defendants." Pl. Mem. of Law, at 16. Defendants' counsel David Garland partially confirms this account, stating in his sworn affirmation that Mr. Viswanathan delivered copies of the Amended Complaint and a summons for each of the Moving Defendants to the New York City office of Garland's law firm on March 30, 2016, but that the firm returned the documents the next day, explaining that it did not represent any of the Moving Defendants at that time and was not authorized to accept service on their behalf. Garland Aff. ¶¶ 3, 4. Plaintiff did not attempt "leave and mail" service under § 308(2) until nearly three weeks later.

"Good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control." *McKibben v. Credit Lyonnais*, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999); *accord Carroll*, 2005 WL 1711184, at *2 (finding no good cause when plaintiff hired a process

---

[12] There is nothing in the record to support plaintiff's claim, made in his memorandum, that the summons was issued on March 22, 2016. Neither the Moving Defendants' affirmations nor plaintiff's Certificates of Service include copies of the documents claimed to have been served, and the docket contains no record of the issuance of a summons for any of the Individual Defendants.

server who neglected to serve the defendant until after the service deadline, calling such a circumstance "a classic example of inadvertence"). In this case, none of the circumstances cited by counsel were "beyond his control" so as to excuse his obligation to obtain a summons and serve the Moving Defendants within 90 days of filing the Amended Complaint. Consequently, Rule 4(m) does not require the Court to excuse plaintiff's untimely service.

### iii.  Discretionary Authority

Although the Court has discretionary authority to excuse untimely service even in the absence of good cause, I respectfully recommend that the District Judge decline to do so here. As noted above, discretionary extensions, in the absence of good cause, are properly analyzed under the four *DeLuca* factors, which are:

> (1) whether any applicable statutes of limitations would bar the action once refiled;
> (2) whether the defendant had actual notice of the claims asserted in the complaint;
> (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service.

*DeLuca*, 695 F. Supp. 2d at 66. Plaintiff's memorandum of law does not discuss any of these factors. None of them weighs in his favor.

The first *DeLuca* factor does not help plaintiff. Plaintiff has requested to voluntarily dismiss the Second and Fourth Causes of Action. His only remaining claims against the Moving Defendants arise under the ADEA and the NYHRL, in the Third and Fifth Causes of Action. Although the statute of limitations on his ADEA claims appears to have run,[13] those claims fail as a matter of law for the reasons discussed below.

---

[13] The ADEA requires that a charge first be filed with the U.S. Equal Employment Opportunity Commission (EEOC) or equivalent state agency within 300 days of the allegedly discriminatory act, 29 U.S.C. §§ 626(d)(2), 633(b), and that a claim then be filed in court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). The EEOC issued its right-to-sue letter to plaintiff on January 30,

The statute of limitations for plaintiff's NYHRL claims has not run, at least as to some alleged discriminatory conduct.[14] "Claims brought under [the NYHRL] are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter." *DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012). Plaintiff filed his charge with the EEOC on July 3, 2014, *see* Aff. of David Garland, Esq. dated Dec. 29, 2015, Ex. A (Dkt. No. 42-1), at 12, and the statute of limitations was tolled for six months and 27 days thereafter, until EEOC issued its right-to-sue letter on January 30, 2015. Plaintiff could, in theory, refile any NYHRL claims based on events that occurred within the past three years, six months, and 27 days. The fact that some subset of his claims may be predicated on as-yet unspecified earlier conduct "does not require [the court] to exercise [its] discretion in favor of plaintiff." *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999).

With respect to the second and third *Deluca* factors, plaintiff has offered nothing to suggest that the Moving Defendants had any actual notice of the claims against them before being served in April 2016, much less that they attempted to conceal the defect in service. To the contrary: the Moving Defendants sought dismissal, based on the asserted defect in service, approximately one month after they received the summons and complaint. For that reason, the second and third factors

---

2015, *see* Am. Compl., at 34–35, and plaintiff filed his first complaint 90 days thereafter, on April 30, 2015.

[14] Plaintiff's NYHRL claims against Pennella and Amarillo, and his age-related NYHRL claims against Zocalli, all fail as a matter of law, as discussed below. To the extent plaintiff may state a race, color, or national origin-based NYHRL claim against Zocalli – a question not currently before the Court – the Amended Complaint contains little information about when any such misconduct may have occurred. Plaintiff alleges that in October 2013, Zocalli taunted him and told him that he would not be promoted, Am. Compl. ¶ 40, and that "during the last two years or so" preceding the filing of the Amended Complaint, Zocalli "would openly show racially intoned actions and utterances and ridicule and hatred toward plaintiff." Id. ¶ 42.

also do not favor excusing the untimely service. *Cf. DeLuca*, 695 F. Supp. at 67 (holding that the second and third factors favored excusing untimely and ineffective service where the plaintiff served the defendant with a civil cover sheet, complaint, and other documents, but neglected to serve the summons, and defendant's counsel failed to mention the missing paperwork at any time during the more than three months before the service deadline passed).

With respect to the fourth factor, neither party has identified any particular prejudice to defendants that would result from excusing the untimely filing. However, the Court notes that the fact discovery period in this action ended on February 29, 2016, nearly two months before the Moving Defendants were served, meaning that the Moving Defendants were unable to participate meaningfully in discovery. Moreover, even a lack of prejudice to defendants is not dispositive. *See Zapata*, 502 F.3d at 199 (finding no abuse of discretion for failure to excuse untimely service, "even assuming the prejudice to [defendant] was slight," where plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and . . . advanced no cognizable excuse for the delay").

None of the four factors weighs strongly in favor of excusing plaintiff's failure to timely serve the Moving Defendants. "[T]hough leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun*, 1994 WL 463009, at *4 (S.D.N.Y. Aug. 25, 1994). "[I]f the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits." *Mused*, 169 F.R.D. at 35.

Even considering the file in the light most favorable to plaintiff, he has offered no acceptable explanation for his failure to procure a summons until March 22, 2016 (91 days after he filed the Amended Complaint), his failure to even attempt service on the Moving Defendants until March 30, 2016 (99 days after he filed the Amended Complaint), by which point fact discovery had been closed for more than one month, or his failure to deliver the summons and Amended Complaint to any of the Moving Defendants until April 19, 2016 (119 days after he filed the Amended Complaint). These failures are particularly egregious given that plaintiff had already missed his first deadline for filing an Amended Complaint (December 3, 2015), had also missed his second deadline for filing an Amended Complaint (December 7, 2015), and had been put on notice by Judge Abrams that further late filings would not be excused. *See* Order dated Dec. 10, 2015, at 2. I therefore respectfully recommend that the motion to dismiss the Amended Complaint as against the Moving Defendants for untimely service pursuant to Rule 12(b)(5) be GRANTED.

## III.       Dismissal for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

Should the District Judge elect not to dismiss the case as to the Moving Defendants under Rule 12(b)(5), I respectfully recommend that their motion to dismiss portions of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be GRANTED. I further recommend that no additional time for discovery be allowed with respect to any remaining defendants or claims.

### A.  Legal Standard for 12(b)(6) Motion

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009).

At a minimum, the complaint must "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). The standard cannot be satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene*, 10 F. App'x at 34. Instead, a complaint should provide "specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

### B.  Third Cause of Action – ADEA Claim

The Third Cause of Action alleges that the Individual Defendants "discriminated against and caused/created harassment/hostile environment to plaintiff George on the basis of his age (over the age of 40)," in violation of the ADEA. Am. Compl. ¶ 59. However, the ADEA does not permit "imposition of personal liability on the part of an individual, employee, or supervisor." *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 391 (S.D.N.Y. 2011) (dismissing claims against executive director of organization, brought under ADEA and other federal anti-discrimination statutes, because those statutes did not provide for individual liability); *accord Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (affirming dismissal of ADEA claim because "the ADEA precludes individual liability") (citing *Parker v. Metropolitan Transp. Auth.*, 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000)). Because no cognizable claim against Zocalli, Amarillo, or Pennella exists under the ADEA, I respectfully recommend that the Third Cause of Action be DISMISSED as to those defendants.

### C.  Fifth Cause of Action – NYHRL Claims

#### i.  Legal Standard for Individual Liability Under the NYHRL

The Fifth Cause of Action alleges that "Defendant has discriminated against, disparately treated and created hostile environment to, plaintiff George on the basis of his age, race, color, and national origin, in violation of" the NYHRL. Am. Compl. ¶ 70. To the extent the Fifth Cause of Action is intended to apply to the Moving Defendants, the NYHRL – unlike the ADEA – allows them to be held liable individually if each qualifies "as either an employer . . . or as an 'aider and

abettor.'" *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 304 (E.D.N.Y. 2012)

(citing N.Y. Exec. Law §§ 296(1)(a) and 296(6)).[15]

An individual can be sued personally for discrimination as an "employer" only if that individual holds sufficient authority and power to do more than "simply carry out personnel decisions made by others." *See Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 676–77 (S.D.N.Y. 2001) (holding that the general manager of a McDonald's franchise, who had authority to set employees' schedules, hours, and salaries, and who was alleged to have personally engaged in gender discrimination and sexual harassment, could be held liable as an "employer" under § 296(1)(a)). In making this inquiry, courts apply an "economic reality" test, considering whether the defendant: "1) had the power to hire and fire the employees; 2) supervised and controlled employee work schedules or conditions of employment; 3) determined the rate and method of payment; and 4) maintained employment records." *Pellei v. Int'l Planned Parenthood Fed'n/W. Hemisphere Region, Inc.*, 1999 WL 787753, at *15 (S.D.N.Y. Sept. 30, 1999) (citing *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542 (1984)). Under this test, no single factor is dispositive, as "economic reality is based on all the circumstances." *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Even if an individual employee "has a title as an officer and is the manager or supervisor of a corporate division," the employee cannot be held individually liable under § 296(1)(a) if she does not possess an ownership interest in the company, or otherwise possess sufficient authority

---

[15] Section 296(1)(a) of the NYHRL makes it "an unlawful discriminatory practice" for "an employer . . . , because of an individual's age, race, . . . , color, [or] national origin . . . , to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Section 296(6) states that it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [by § 296(1)], or to attempt to do so."

and power to satisfy the "economic reality" test. *Patrowich*, 63 N.Y.2d at 542 (holding that a corporate employee who was "one of approximately 800 vice-presidents" was not subject to individual liability for age or sex discrimination under the NYHRL); *accord Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (holding that under the *Patrowich* standard, a district manager who was responsible for the accounts to which the plaintiff was assigned and who could review the plaintiff's performance, affecting her future with the company, was not liable as an "employer" under § 296(1)).

Alternatively, an individual employee may be subject to aiding and abetting liability, pursuant to § 296(6), when that employee "actually participates in the conduct giving rise to a discrimination claim." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (quoting *Tomka,* 66 F.3d at 1317). Aiding and abetting liability "requires that the aider and abettor share the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) (quoting *Brice v. Sec. Operations Sys., Inc.*, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)). Further, "to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Fried*, 2011 WL 2119748, at *7. Because "[i]t is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting," an individual defendant cannot be held liable under this theory unless the plaintiff can also establish the liability of the employer under the NYHRL. *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (quoting *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)).

### ii. Legal Standards for NYHRL Employment Discrimination and Hostile Work Environment Claims

Assuming any of the Moving Defendants are subject to suit under the NYHRL, plaintiff's disparate treatment and hostile work environment claims would be analyzed using the same standard as their federal counterparts (in this case, Title VII and the ADEA). *See Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) ("hostile work environment claims under Title VII and the [NYHRL] are governed by the same standard") (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)); *Cappelli v. Jack Resnick & Sons, Inc.*, 2016 WL 958642, at *7 (S.D.N.Y. Mar. 8, 2016) (claims of age-based discrimination under the NYHRL are analyzed "under the same standard as discrimination claims brought under the ADEA"); *Dressler v. New York City Dep't of Educ.*, 2012 WL 1038600, at *14 (S.D.N.Y. Mar. 29, 2012) (granting summary judgment against plaintiff on hostile work environment claim filed under the NYHRL for "the same reasons discussed" in analysis of the ADEA hostile work environment claim, because NYHRL claims use the same standards).

As discussed in my June 1 Report and Recommendation, the federal standard uses the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). To establish a *prima facie* case of disparate treatment employment discrimination, a plaintiff must demonstrate that (1) he fell within a protected class; (2) he was qualified for the position he held; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (addressing Title VII employment discrimination); *Cretella v. Liriano*, 633 F. Supp. 2d 54, 70 (S.D.N.Y. 2009) (addressing ADEA and Title VII claims), *aff'd*, 370 F. App'x 157 (2d Cir. 2010).

If the circumstances giving rise to an inference of discrimination include allegedly discriminatory remarks, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). There is no bright-line rule for when remarks become "too attenuated" to be significant to a determination of discriminatory intent. *Tolbert*, 790 F.3d at 437.

A hostile work environment claim under the NYHRL, as under Title VII, requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006) (internal quotation marks omitted); *accord Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (analyzing NYHRL and Title VII hostile work environment claims under same standard). "A plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Gorzynski*, 596 F.3d at 102. Generally, unless an incident of harassment is sufficiently severe, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*. (quoting *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)). "[T]he Supreme Court has held that a work environment's hostility should be assessed based on the 'totality of the circumstances,'" including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (discussing gender-based hostile work environment claims under Title VII) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

### iii.   Application of Legal Standards to NYHRL Claims Against Zocalli

Defendant Zocalli moves to dismiss the Fifth Cause of Action only to the extent of its claims against him for age discrimination. I agree that there is no basis for holding Zocalli individually liable for age discrimination under the NYHRL.

First, plaintiff has not pled any factual basis for holding Zocalli liable as an "employer" under the *Patrowich* "economic reality" test. While Zocalli is alleged to have been plaintiff's "immediate supervisor," Am. Compl. ¶ 26, there is no suggestion that he held any ownership interest in PDI, nor that he had the power to personally make personnel decisions. Second, neither Zocalli nor any of the Individual Defendants can be held liable as an "aider or abettor" to any age-based discrimination or related misconduct by PDI, because plaintiff has not pled facts sufficient to establish that PDI itself engaged in any such misconduct. *See George*, 2016 WL 3648371, at *5–7. Third, the Amended Complaint contains no factual allegations whatsoever regarding age-based discriminatory acts or statements by Zocalli. Plaintiff does allege that Zocalli insulted and discriminated against him "based upon [his] skin color, Asian origin and background, his language, his accent, [and engaged in] racially connotated intimidation [sic]." Am. Compl. ¶ 43. Nowhere, however, does he allege that Zocalli engaged in any such conduct based on his age.

I therefore respectfully recommend that the age-related NYHRL claims against Zocalli in the Fifth Cause of Action be DISMISSED.

### iv.   Application of Legal Standards to NYHRL Claims Against Amarillo

Defendant Amarillo moves to dismiss the Fifth Cause of Action in its entirety as to him. I agree that defendant Amarillo cannot be held individually liable under the NYHRL.

First, plaintiff has not pled any factual basis for holding Amarillo liable as an "employer" under § 296(1)(a). Plaintiff alleges only that Amarillo held a "managerial/supervisory position[]"

26

with PDI, and that Amarillo sent plaintiff home early on December 24, 2013. Am. Compl. ¶¶ 14,

26. Plaintiff does not allege that Amarillo held any ownership interest in PDI, nor that he had the

power to make personnel decisions without approval from others. Second, the Amended

Complaint lacks any allegations supporting "aider or abettor" liability under § 296(6) as to

Amarillo. Other than conclusory assertions that the Individual Defendants were all part of the

"plot" to remove plaintiff from his position, the Amended Complaint contains no allegations that

would tie Amarillo in any way to any discrimination, disparate treatment, or creation of a hostile

work environment, on any basis. The Amended Complaint thus contains no factual allegations

suggesting that Amarillo ever "actually participate[d] in the conduct giving rise to a discrimination

claim." *Tomka*, 66 F.3d at 1317.

I therefore respectfully recommend that the Fifth Cause of Action be DISMISSED as to

defendant Amarillo in its entirety.

### v.   Application of Legal Standards to NYHRL Claims Against Pennella

Defendant Pennella also moves to dismiss the Fifth Cause of Action in its entirety as to

him. Once again, I agree that this defendant cannot be held individually liable under the NYHRL.

First, with respect to "employer" liability under § 296(1)(a), while the Amended Complaint

alludes to Pennella having some authority to influence working hours and promotions, it contains

no allegation that he had an ownership stake in PDI. Moreover, it does not allege that Pennella

himself personally had the power to hire or fire plaintiff. To the contrary:  plaintiff alleges that

Pennella once offered plaintiff a promotion, but that offer was conditioned upon, among other

things, the approval of the human resources department after an interview. Am. Compl. ¶ 40.

Moreover, plaintiff does not even suggest that Pennella was personally involved in his January

2014 firing. The Amended Complaint therefore does not plead sufficient facts to state an individual

claim against Pennella as an "employer." *See Russell v. Aid to Developmentally Disabled, Inc.*, 2013 WL 633573, at *17 (E.D.N.Y. Feb. 20, 2013) (holding that neither an "Executive Director" who was "responsible for . . . overall administrative operations" along with others, nor a "Program Director," were subject to individual liability as "employers" pursuant to § 296(1) because while they may "in reality, have [had] the power to do more than carry out the personnel decisions of others" plaintiff made no such allegation, and no further information about their job duties, responsibilities, or authority was provided).

Second, the Amended Complaint lacks any allegations supporting "aider or abettor" liability under § 296(6) as to Pennella. Other than the conclusory assertion that Pennella was somehow involved in the "plot" to remove plaintiff (perhaps by the seemingly innocuous act of giving permission for workers to leave early on December 31, 2013), the Amended Complaint contains no suggestion that Pennella engaged in any discriminatory conduct or participated in the creation of a hostile work environment, or even that he was aware of any such conduct on the part of any other person. Plaintiff thus fails to allege that Pennella ever "actually participated" in any conduct giving rise to a claim for discrimination, disparate treatment, or hostile work environment under the NYHRL.

I therefore respectfully recommend that the Fifth Cause of Action be DISMISSED as to defendant Pennella in its entirety.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Moving Defendants' motion to dismiss the Amended Complaint as to them pursuant to Rule 12(b)(5) be GRANTED. In the alternative, I recommend that their motion to dismiss portions of the Amended Complaint for failure to state a claim pursuant Rule 12(b)(6) be GRANTED, and that no additional time for

discovery with respect to the remaining defendants and claims be allowed. Because plaintiff has agreed to voluntarily dismiss the Second Cause of Action as to the Individual Defendants, and Fourth Cause of Action in its entirety, those claims should also be dismissed.

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Ronnie Abrams at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Abrams. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  New York, New York
         August 31, 2016

**SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**

29