UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAJU GEORGE,

    Plaintiff,

v.

PROFESSIONAL DISBOSABLES
INTERNATIONAL, INC.; DAVID
PENNELLA; JODI KIERNAN; JOSEPH
ZOCALLI; and CUSTER (JAY)
AMARILLO,

    Defendants.

No. 15-CV-3385 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Saju George brings this discrimination action against his former employer, Defendant Professional Disposables, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New York State Human Rights Law. Before the Court is Defendant's motion for partial reconsideration of the Court's July 24, 2017 decision denying Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion for partial reconsideration is denied.

## BACKGROUND[1]

Plaintiff is a native of India and identifies his race as "Indian Asian," "Asian," or "non-Caucasian." Def.'s Rule 56.1 Stmt. ("Def.'s 56.1") ¶¶ 6–7 (Dkt. 109). Defendant is a manufacturer and distributor of sanitized wet wipes. *See id.* ¶ 1. On January 6, 1997, Defendant

---

[1] The Court assumes familiarity with the facts underlying this case, which are recited in the Court's prior orders. *See, e.g.*, R. & R. (June 1, 2016) (Dkt. 84), *adopted by* Order (July 14, 2016) (Dkt. 96); R. & R. (Aug. 31, 2016) (Dkt. 98), *adopted by* Op. & Order (Nov. 16, 2016) (Dkt. 101); Op. & Order (May 2, 2017) (Dkt. 115).

hired Plaintiff as a machine operator at its Orangeburg, New York facility. *See id.* On January 16, 2014, Defendant terminated Plaintiff's employment, citing his failure to obtain permission before taking an extended lunch break and his failure to clock out at the end of a shift as bases for its decision. *See id.* ¶ 38; Decl. of David W. Garland in Supp. of Def.'s Mot. for Summ J. ("Garland Decl.") Ex. M (Dkt. 106). Plaintiff claims that he was subjected to discrimination and a hostile work environment on the basis of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New York State Human Rights Law. *See* Am. Compl. (Dkt. 37).[2]

In an oral ruling on July 24, 2017, the Court denied Defendant's motion for summary judgment. *See* Tr. of Decision (Dkt. 149). With respect to Plaintiff's discrimination claims, the Court determined that a reasonable juror could find both that Plaintiff had established a *prima facie* case of discrimination and that Defendant's legitimate, non-discriminatory reasons for his termination were pretext for discrimination. *See id.* at 3:10–14:5. Turning to Plaintiff's hostile work environment claim, the Court concluded that a reasonable juror could, on the basis of Plaintiff's testimony that his direct supervisor made offensive remarks regarding his race and national origin at least five times per day, find that Plaintiff was subjected to a hostile work environment. *See id.* at 14:6–15:25.

On August 7, 2017, Defendant filed a motion for partial reconsideration. *See* Def.'s Mot. for Recons. (Dkt. 142). On August 21, 2017, Plaintiff filed an opposition to Defendant's motion, *see* Pl.'s Mem. in Opp'n to Def.'s Mot. for Recons. ("Pl.'s Mem.") (Dkt. 146), and on August 25, 2017, Defendant filed a reply, *see* Def.'s Reply Mem. (Dkt. 147).

---

[2] In his amended complaint, Plaintiff asserted several other claims against both PDI and four individual defendants. *See* Am. Compl. These claims have since been withdrawn or dismissed.

2

## LEGAL STANDARD

"Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b)." *Farmer v. United States*, No. 12-CR-758 (AJN), 2017 WL 3448014, at *2 (S.D.N.Y. Aug. 10, 2017) (quoting *Shaw v. Mcdonald*, No. 14-CV-5856 (NSR), 2016 WL 828131, at *1 (S.D.N.Y. Feb. 22, 2016)). "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Cohen Lans LLP v. Naseman*, No. 14-CV-4045 (JPO), 2017 WL 1929587, at *1 (S.D.N.Y. May 10, 2017) (quoting *Pablo Star Ltd. v. Welsh Gov't*, No. 15-CV-1167 (JPO), 2016 WL 2745849, at *1 (S.D.N.Y. May 11, 2016)). "In order to prevail on a motion for reconsideration, a movant must demonstrate '(i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Pablo Star*, 2016 WL 2745849, at *1). "The standard governing motions for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp., Inc.*, No. 15-CV-6114 (PAE), 2017 WL 1283843, at *1 (S.D.N.Y. Apr. 5, 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). "A motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-CV-488 (LGS), 2017 WL 1378276, at *1 (S.D.N.Y. Apr. 14, 2017) (quoting *Analytical Surveys*, 684 F.3d at 52); *see also de los Santos v. Fingerson*, No. 97-CV- 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998) ("[T]he proponent of a motion for reconsideration is not supposed to treat the court's initial decision as the opening

3

of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.").

## DISCUSSION

### A. Consideration of Joseph Zocalli's Alleged Statements

Defendant first argues that the Court incorrectly applied Second Circuit precedent by determining that Joseph Zocalli's alleged remarks regarding Plaintiff's race, color, and national origin give rise to an inference of discrimination. *See* Def.'s Mem. in Supp. of Mot. for Recons. ("Def.'s Mem.") at 4–13 (Dkt. 143); Tr. of Decision at 4:15–8:6.[3] Specifically, Defendant argues that no reasonable juror could infer discrimination on the basis of Zocalli's alleged remarks because there is no evidence that Zocalli played a meaningful role in Plaintiff's termination. This argument is without merit.

Defendant is correct that, in determining whether a statement regarding an employee's protected characteristics is probative of discrimination, courts often consider whether the speaker played a "meaningful role" in the adverse employment action. *See, e.g.*, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999). In this case, the record contains sufficient evidence for a reasonable juror to conclude that Zocalli did, in fact, play a meaningful role in Defendant's decision to terminate Plaintiff's employment. There is no dispute that Zocalli was Plaintiff's direct supervisor—and had been, according to Plaintiff, for a period of six years. *See* Pl. Dep. Tr. at 117:7–13; *see also* Def.'s 56.1 ¶ 22 ("George, as a Mechanic, reported directly to Joseph Zocalli, Maintenance Supervisor."); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)

---

[3] As the Court explained, Plaintiff testified at his deposition that Zocalli made the following statements to him during his employment: (i) "You are a nasty Indian," Letter from David W. Garland to Ct. Ex. 1 ("Pl. Dep. Tr.") at 84:3–4 (Dkt. 125-1), (ii) "The Indian guy . . . he's not talking properly," *id.* at 106:2–3, (iii) "You black, you Indian, you don't know how to behave, you don't know how to speak," *id.* at 107:7–9, and (iv) "I don't like your color," *id.* at 118:22. Plaintiff also testified that Zocalli referred to him as a "chalupa." *See id.* at 106:5, 109:23.

4

(explaining that, in determining whether a remark is probative of discrimination, courts consider "who made the remark (i.e., a decision-maker, *a supervisor*, or a low-level co-worker)" (emphasis added)). The record also contains evidence suggesting that Zocalli had a significant role in the investigation that ended in Plaintiff's termination. Indeed, Zocalli initiated the investigation by summoning Plaintiff to an "empty office" to discuss the alleged performance issues that were ultimately cited as the basis for his termination. Def.'s 56.1 ¶ 31. As the investigation continued, a reasonable juror could conclude that Zocalli maintained an active role. Zocalli participated in multiple meetings with Plaintiff and Jodi Kiernan, the Human Resources manager who signed Plaintiff's termination letter. *See, e.g.*, Def.'s 56.1 ¶ 32; Garland Decl. Ex. M; Pl. Dep. Tr. at 196:10–22. The evidence suggests that Zocalli may have spoken during these meetings, *see, e.g.*, Pl. Dep. Tr. at 199:22–25, and his statements were attached as "supporting documentation" to an internal memorandum discussing Plaintiff's termination, *see* Garland Decl. Ex. L. Moreover, while Defendant asserts that Kiernan played a far more significant role in the process than Zocalli, a reasonable juror could conclude otherwise: Plaintiff testified, for example, that he did not meet alone with Kiernan during the investigation, but was "always" with "Joe Zocalli or Jay Amarillo." Pl. Dep. Tr. at 167:20–168:4. This evidence, consisting of both Zocalli's role as Plaintiff's direct supervisor and as a key player in the termination process, provides a sufficient basis for a juror to reasonably infer discrimination on the basis of Zocalli's alleged statements. *See Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (holding that alleged statements "made directly to [the plaintiff] on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process" were "direct evidence of discriminatory animus").[4]

---

[4] *See also, e.g., Brown v. Crowdtwist*, No. 12-CV-6110 (HB), 2014 WL 1468145, at *3 (S.D.N.Y. Apr. 15, 2014) (finding that alleged statements made by an individual who "was not Plaintiff's direct supervisor" but "was one of the three main decisionmakers in the firm, and undisputedly had input into Plaintiff's termination" probative of discriminatory intent); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp.

5

Defendant's argument that the Court's ruling conflicts with the Second Circuit's standard for "cat's paw" liability is also unpersuasive. *See* Def.'s Mem. at 9–13. As the Second Circuit explained in *Vasquez v. Empress Ambulance Service, Inc.*, 835 F.3d 267 (2d Cir. 2016), the "cat's paw" theory of liability "refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Id.* at 272 (quoting *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012)). *Vasquez* further explained that the "cat's paw" theory accords with the Second Circuit's "longstanding precedent" holding, as discussed above, that "a Title VII plaintiff is entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the decisionmaking process." *Id.* (alteration omitted) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008)). Thus, the "cat's paw" theory of liability extends an employer's potential liability to circumstances in which there is no evidence that anyone with a "meaningful role" in the decisionmaking process harbors any impermissible bias, but where there is evidence of manipulation by a subordinate who does. *See id.* Here, however, the Court had no need to rely on the "cat's paw" theory, as there is sufficient evidence for a juror to reasonably conclude that Zocalli both evinced "impermissible bias" against Plaintiff and played a "meaningful role" in the

---

2d 244, 275–76 (E.D.N.Y. 2013) (determining that alleged remarks made by a co-CEO, who "was not the ultimate decision maker" in a challenged hiring decision but "played a role in the selection process" and "had 'input' into the hiring decision" was sufficient to demonstrate a triable issue of fact as to discriminatory intent); *Quinones v. Atl. Hyundai*, No. 06-CV-1626 (TLM), 2010 WL 681671, at *2 (E.D.N.Y. Feb. 25, 2010) (relying on "evidence of discriminatory comments made to an employee by a supervisor who had influence in the decision-making process" as evidence of an employer's discriminatory motive); *Rolon v. Pep Boys–Manny, Moe & Jack*, 601 F. Supp. 2d 464, 468–69 (D. Conn. 2009) (finding that an individual's "status as [the plaintiff's] supervisor," combined with the "proximity of the remarks to the termination" and "the discriminatory content of the remarks" gave rise to an inference of discrimination and that the fact that the speaker "did not make the decision to terminate [the plaintiff]" was "not determinative").

6

decisionmaking process. *Id.* Accordingly, Defendant's discussion of the "cat's paw" theory of liability provides no basis for reconsideration.

### B. Admissibility of Plaintiff's Statements Regarding the Reasons for his Termination

Defendant next argues that the Court erred in ruling that Plaintiff's deposition testimony regarding the reasons for his termination is not admissible under Federal Rule of Evidence 701(b). *See* Def.'s Mem. at 13–17; Tr. of Decision at 10:25–13:15. This argument is also unpersuasive.

Rule 701 provides that a lay witness may testify in the form of an opinion, provided that his testimony is limited to one that is: (a) rationally based on the perception of the witness; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Second Circuit has held that, "[i]n employment discrimination actions, 'Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision.'" *Village of Freeport v. Barrella*, 814 F.3d 594, 611 (2d Cir. 2016) (quoting *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000)). Thus, "[a]lthough witnesses may testify regarding 'their own observations of the defendant's interactions with the plaintiff or with other employees,' they may not opine as to the motives, racial or otherwise, underlying those interactions." *Id.* (quoting *Hester*, 225 F.3d at 185).

In moving for reconsideration, Defendant argues that this rule does not apply where, as here, the witness who "opine[s] as to the motives" of an employer is the plaintiff, rather than a third party. *Id.*; *see* Def.'s Mem. at 14–17. By Defendant's own admission, however, "the Second Circuit does not appear to have confronted the question directly." *Id.* at 15. As a result, Defendant cannot claim that the Court overlooked any "controlling decisions," *Bldg. Serv. 32BJ Health Fund*, 2017 WL 1283843, at *1, or that any "intervening change in controlling law" warrants

reconsideration, *Cohen Lans*, 2017 WL 1929587, at *1 (quoting *Pablo Star*, 2016 WL 2745849, at *1). In any event, Defendant offers no principled basis for distinguishing between the opinion testimony of a third party, such as a coworker, and that of a plaintiff regarding an employer's motives. In either case, the witness is not, as a general matter, "involved in [the] decision-making process" and can only offer "subjective impressions" regarding the reasons for the employer's decision. *Hester*, 225 F.3d at 184. Thus, in either case, "'the witness's opinion as to the defendant's ultimate motivations will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant' was motivated by an impermissible animus." *Id.* at 185 (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)).[5] And in this case, Defendant does not explain why Plaintiff's testimony is any more helpful, or any less subjective, than the testimony a third party might provide. Thus, Defendant has not shown that the Court's ruling regarding the admissibility of Plaintiff's testimony was clearly erroneous or contrary to any controlling decisions.

Rule 701 aside, Defendant appears to argue that Plaintiff's deposition testimony is entitled to dispositive weight because it contradicts the allegations in his amended complaint. It is true that, "in the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, and where the facts alleged are so contradictory that doubt is cast upon their plausibility," a district court may grant the defendant summary

---

[5] Without expressly citing Rule 701, courts routinely conclude that a plaintiff's testimony regarding the reasons for an adverse employment action is not sufficient to show the existence of a triable issue of fact as to his employer's motivation. *See, e.g., Moore v. N.Y. State Div. of Parole*, No. 06-CV-1973 (CPS), 2008 WL 4394677, at *10 (E.D.N.Y. Sept. 23, 2008) (concluding that a plaintiff's "own deposition testimony" that she was discriminated against because of her race and gender was "an insufficient basis from which to infer that the defendants' facially neutral acts were discriminatory"); *Payne v. MTA N.Y.C. Transit Auth.*, 349 F. Supp. 2d 619, 627 (E.D.N.Y. 2004) (finding plaintiff's "own unsubstantiated, subjective belief, embodied in his deposition testimony, that white and black colleagues at the NYCTA conspired to humiliate him and remove him from his position because of his race" was not sufficient to create a triable issue of fact as to whether his reassignment was "the result of racial discrimination").

judgment on the grounds that "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint." *Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir. 2005) (alterations omitted) (internal quotation marks omitted); *accord Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104–05 (2d Cir. 2011) (per curiam). On the other hand, "the court considering a summary judgment motion should not disregard" a plaintiff's allegations or testimony "if there is a plausible explanation for discrepancies in [his] testimony." *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998). Here, Plaintiff's apparent confusion, perhaps due to his difficulty understanding English, provides a "plausible explanation" for discrepancies between his testimony and the allegations in his amended complaint. *Id.*[6] Throughout the testimony upon which Defendant asks the Court to rely, Plaintiff provided answers suggesting that he did not understand the questions being asked and, in some cases, outright stated that he was confused. For example, when asked, "Do you think that your termination had anything to do with where you're from," Plaintiff responded, "Termination? I don't believe that because – I don't believe that. There's only one person, Joe Zocalli, create all these things. He's the one behind it." Pl. Dep. Tr. at 179:5–10. When defense counsel responded, "But to be clear, you don't believe that your national origin, the fact that you're from India and the others were from the Dominican Republic, is the reason that you were discharged," Plaintiff answered, "That's not correct." *Id.* at 179:14–180:8. And when asked why this was not correct, Plaintiff responded, "Joe Zocalli created the problem." *Id.* at 180:10. When defense counsel followed up with further questions, Plaintiff stated, "I don't follow

---

[6] During Plaintiff's deposition, his counsel claimed that Plaintiff did not understand English. *See, e.g.*, Pl. Dep. Tr. at 10:9–10 ("[H]e doesn't understand much of English."); *id.* at 11:7–8 ("He does not understand English."). It does not appear that a translator was present.

the question." *Id.* at 181:10–12.[7] In light of this confusion, and its obligation to view the evidence in the light most favorable to Plaintiff, the Court cannot conclude that no reasonable juror would credit the allegations made in the amended complaint. Accordingly, the discrepancies between Plaintiff's amended complaint and his deposition testimony do not provide a basis for granting Defendant summary judgment.

### C. Consideration of "Comparator" Evidence

Finally, Defendant argues that the Court erred in "rejecting" evidence that other employees were, according to Defendant, treated "exactly the same way" as Plaintiff. *See* Def.'s Mem. at 17–18. Defendant mischaracterizes the Court's ruling. The Court did not "reject" evidence regarding the treatment of other PDI employees. This evidence may be relevant and may well support Defendant's position at trial. At the summary judgment stage, however, the Court concluded that this evidence was not sufficient to demonstrate the absence of any dispute of fact as to whether Plaintiff was terminated on the basis of his race or national origin. Defendant has not shown that this conclusion was clearly erroneous or contrary to controlling law.

---

[7] The confusion appears to have continued throughout this exchange. For example, when asked whether he believed that his "color had anything to do with [his] termination," Plaintiff responded, "Only Joe Zocalli worry about me. I don't know anything else. He is trying to – he raised my color, he's only one person I'm telling." Pl. Dep. Tr. at 183:22–184:4. When asked again whether he believed that "the company terminated [his] employment because of [his] color," Plaintiff answered, "No." *Id.* at 188:23–189:2. Yet, when asked shortly thereafter whether he could say "that it was [his] race that caused [his] discharge," Plaintiff responded, "It's part of the termination maybe." *Id.* at 192:6–9.

10

## CONCLUSION

For the reasons set forth above, Defendant's motion for reconsideration is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 142.

SO ORDERED.

Dated: October 12, 2017
       New York, New York

Ronnie Abrams
United States District Judge